EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| María de los Ángeles Carrillo Vázquez; José Enrique Carrillo Vázquez; Francisco José Carrillo Vázquez y Carlos Roberto Carrillo Vázquez<br><br>Peticionarios<br><br>v.<br><br>Hon. María Rodríguez Cintrón<br><br>Recurrida | Recurso Gubernativo<br><br>2019 TSPR 110<br><br>202 DPR ____ |

Número del Caso: RG-2017-1

Fecha: 5 de junio de 2019

Abogado de la parte peticionaria:

    Lcdo. Jesús Delgado Vélez

Registro de la Propiedad
parte recurrida:

    Hon. María Rodríguez Cintrón
    Registradora

Materia: Sentencia con Opinión de conformidad y Opinión de conformidad en parte y disidente en parte.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María de los Ángeles Carrillo Vázquez; José Enrique Carrillo Vázquez; Francisco José Carrillo Vázquez y Carlos Roberto Carrillo Vázquez

Peticionarios

v.

Hon. María Rodríguez Cintrón

Recurrida

RG-2017-0001    *Recurso Gubernativo*

SENTENCIA

En San Juan, Puerto Rico, a 5 de junio de 2019.

Atendido el recurso gubernativo que presentó la parte peticionaria y el alegato que presentó la Honorable Registradora María Rodríguez Cintrón, se revoca en parte y se confirma en parte la recalificación recurrida. En particular, se revoca la determinación de que no surgió el derecho de acrecer de los peticionarios sobre la porción de la herencia que quedó vacante. Asimismo, se confirma la determinación de que procedía requerir documentos que acreditaran la capacidad representativa de la Sra. María de los Ángeles Carrillo Vázquez para comparecer a la Escritura Núm. 80 de partición a nombre del Sr. Francisco Carrillo Díaz. Por consiguiente, se ordena la inscripción de la Escritura Núm. 80 de partición, sujeto a que se presenten documentos que acrediten la capacidad representativa de la Sra. María de los Ángeles Carrillo Vázquez para comparecer a nombre del Sr. Francisco Carrillo Díaz.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emitió una Opinión de Conformidad a la cual se unen el Juez Asociado señor Martínez

Torres, el Juez Asociado señor Feliberti Cintrón y el Juez Asociado señor Colón Pérez. El Juez Asociado señor Rivera García emitió una Opinión de conformidad en parte y Disidente en parte. El Juez Asociado señor Estrella Martínez disiente sin opinión escrita. La Juez Asociada señora Rodríguez Rodríguez no intervino.


José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María de los Ángeles Carrillo Vázquez; José Enrique Carrillo Vázquez; Francisco José Carrillo Vázquez y Carlos Roberto Carrillo Vázquez

      Peticionarios

      v.

Hon. María Rodríguez Cintrón

      Recurrida

RG-2017-0001     *Recurso Gubernativo*

La Jueza Presidenta ORONOZ RODRÍGUEZ emitió una Opinión de Conformidad a la cual se unen el Juez Asociado señor Martínez Torres, el Juez Asociado señor Feliberti Cintrón y el Juez Asociado señor Colón Pérez.

En San Juan, Puerto Rico, a 5 de junio de 2019.

Estoy conforme con la Sentencia que antecede. Este recurso requería resolver si una testadora hizo una especial designación de partes al distribuir su herencia entre sus herederos de forma que se excluyó el derecho de acrecer de estos. Por los fundamentos que discutiré, la Sentencia que emite una Mayoría de este Tribunal dispone correctamente que la Registradora erró al concluir que no surgió el derecho de acrecer de los herederos que sobrevivieron a la testadora.

I

La Sra. María Carrillo Norat otorgó un testamento abierto el 3 de diciembre de 2004 en el

cual instituyó como sus únicos y universales herederos a su hermano Francisco Carrillo Norat en un "50 por ciento" de la herencia y en el otro "50 por ciento" de la herencia, en partes iguales, a María de los Ángeles Carrillo Vázquez, José Enrique Carrillo Vázquez, Francisco José Carrillo Vázquez y Carlos Roberto Carrillo Vázquez (peticionarios), hijos de su otro hermano ya fenecido, Carlos Roberto Carrillo Vázquez.

Además, legó para el cuidado de su sobrino Francisco Carrillo Díaz (hijo de su hermano, Francisco Carrillo Norat) $30,000.00 en efectivo, más el balance disponible en una cuenta de ahorros.[1] Nombró como tutora testamentaria de Francisco Carrillo Díaz a su prima, María de los Ángeles Carrillo Vázquez, para que administrara el legado de manera que se garantizara el mejor cuidado y atención del señor Carrillo Díaz.[2]

En lo pertinente, Francisco Carrillo Norat, hermano y heredero voluntario de la señora Carrillo Norat, falleció en el 2010. La señora Carrillo Norat -la testadora- falleció aproximadamente cinco años después, viuda, sin descendientes ni ascendientes y sin nombrar heredero substituto a Francisco Carrillo Norat.[3]

---

[1] La señora Carrillo Norat dejó otros legados, pero los respectivos legatarios le premurieron sin sustitutos.

[2] La testadora describió a Francisco Carrillo Díaz como "incapaz" en el Testamento Abierto, pero no especificó en qué consiste dicha incapacidad. Del expediente no surge si existe una declaración judicial de incapacidad del señor Carrillo Díaz o si se le ha nombrado algún tutor.

[3] Apéndice, *Escritura de Partición y Adjudicación de Bienes Hereditarios*, pág. 3.

El 7 de diciembre de 2015, se otorgó ante el notario Jesús Delgado Vélez la Escritura Núm. 80, intitulada *Partición y Adjudicación de Bienes Hereditarios* (Escritura Núm. 80). Los peticionarios comparecieron como únicos y universales herederos. Asimismo, el 25 de enero de 2016 presentaron copia certificada de la escritura al asiento de presentación 143 del diario 1035 del Registro de la Propiedad, Sección I de Ponce.[4]

El 3 de abril de 2017, la Registradora, Hon. María Rodríguez Cintrón, notificó tres faltas que impedían la inscripción de la escritura. La primera llamó la atención a la falta de tracto sucesivo entre la testadora y la sucesión, ya que entendió necesario que se presentara el testamento como instancia antes de inscribir la escritura de partición de herencia.

La segunda falta aludió al hecho de que el señor Carrillo Norat, heredero voluntario de un 50 por ciento de la herencia, premurió a la causante. Según la Registradora, esta porción vacante de la herencia les corresponde a los herederos legítimos de la testadora, razón por la cual requirió la presentación de la Declaratoria de Herederos de la señora Carrillo Norat.

---

[4] Se acompañaron como documentos complementarios: la Escritura Núm. 2 sobre Testamento Abierto; copia certificada de la notificación de la Escritura Núm. 2 sobre Testamento Abierto; copia certificada sobre la cancelación de los correspondientes sellos de rentas internas y del impuesto notarial cancelados en la escritura original, certificación de la Oficina del Director de Inspección de Notarías sobre el Registro de Testamentos, los certificados de defunción de Francisco Carrillo Norat, María Alejandra Carrillo Norat y Paula Vázquez Torres, certificación negativa sobre pensión alimentaria, y certificación de cancelación de gravamen contributivo.

La tercera y última falta señaló que María de los Ángeles Carrillo Vázquez compareció a la escritura como tutora por testamento de Francisco Carrillo Díaz,[5] y aceptó los legados dejados a favor de este en el Testamento Abierto, pero no se acompañó la autorización judicial de la aceptación del legado requerida por el artículo 175 del Código Civil para que surta efecto el nombramiento.

Los peticionarios presentaron un *Escrito de Recalificación*. Aceptaron la primera falta relacionada a la presentación del Testamento Abierto para cumplir con el principio de tracto y negaron haber cometido las restantes faltas. Sobre la segunda falta, argumentaron que no era necesaria una declaratoria de herederos de la testadora, ya que la porción de la herencia vacante como resultado de la muerte del señor Carrillo Norat acrece a los restantes herederos voluntarios. Fundamentaron su postura en que la testadora designó como heredero en un 50 por ciento al señor Carrillo Norat, y en el restante 50 por ciento a los hijos de su fenecido otro hermano, en partes iguales, lo que a su juicio no es una designación especial de partes que impida el derecho de acrecer.

En torno a la tercera falta, adujeron que es un asunto que excede las facultades de la Registradora, ya que el legado en cuestión no recae sobre bienes inmuebles. Además,

---

[5] La Registradora alega que ni de la *Escritura de Partición y Adjudicación de Bienes Hereditarios* ni del Testamento Abierto otorgado por la señora Carrillo Norat surge si la incapacidad de Francisco Carrillo Díaz es física o mental; si es una incapacidad que pueda impedirle comparecer al otorgamiento de la escritura; si existe determinación judicial de incapacidad o si se encuentra bajo tutela.

sostuvieron que no se ha cuestionado judicialmente la validez de la Escritura Núm. 80 bajo el fundamento de que no se obtuvo la autorización judicial requerida previo a la aceptación del legado. Por último, arguyeron que la aceptación del legado por la tutora testamentaria hizo cumplir la voluntad de la testadora y de ninguna forma afectó los derechos del legatario.

El 12 de junio de 2017 la Registradora denegó la solicitud de recalificación por los mismos fundamentos esbozados en la notificación de faltas inicial. Aun inconformes, el 29 de junio de 2017 los peticionarios presentaron este *Recurso gubernativo*, en el que reiteran los argumentos presentados en su Escrito de Recalificación.[6] Contando con la comparecencia de ambas partes, expongo el derecho aplicable.

II

A.   La Calificación Registral

El principio de legalidad exige que solo ingresen títulos válidos y perfectos al Registro de la Propiedad. L.R. Rivera Rivera, Derecho registral inmobiliario puertorriqueño, 3ra ed., San Juan, Jurídica Eds., 2012, pág. 274; San Gerónimo Caribe Project v. Registradora, 189 DPR 849, 860 (2013). El ejercicio de la facultad

---

[6] Los peticionarios reiteraron que aceptan la primera falta y que era necesario presentar el Testamento Abierto mediante instancia previo a la presentación de la Escritura Núm. 80. En torno a la segunda falta, sostienen su postura de que el 50 por ciento de la herencia del fenecido señor Carrillo Norat acreció en partes iguales a los herederos voluntarios restantes. Por último, los peticionarios aceptan la tercera falta, en cuanto a la necesidad de presentar la autorización judicial de la aceptación de la herencia por parte del padre, madre o tutor del señor Carrillo Vázquez, pero niegan que sea necesario para establecer la validez del instrumento o para su inscripción.

calificadora de un registrador es la "piedra angular" del principio de legalidad, base de la fe pública registral. BL Investment v. Registrador, 173 DPR 833, 840 (2008); Narváez v. Registrador, 156 DPR 1, 14 (2001); Rivera Rivera, op. cit., pág. 274.

Una vez se presenta un documento para inscripción en el Registro es que surge el deber del registrador de calificarlo y comprobar su legalidad. United Surety v. Registradora, 192 DPR 187, 201 (2015). El artículo 64 de la Ley Hipotecaria y del Registro de la Propiedad, Ley Núm. 198 de 8 de agosto de 1979, 30 LPRA sec. 2267 (Ley Hipotecaria),[7] establece que la calificación comprenderá tres aspectos: (1) las formas extrínsecas de los documentos presentados; (2) la capacidad de los otorgantes; y (3) la validez de los actos recogidos en tales documentos. A su vez, se fundamentará en los documentos que se presenten, los asientos registrales vigentes y las leyes. Íd.

La facultad calificadora del registrador está limitada a determinar si un documento es inscribible o no. Art. 67 de la Ley Hipotecaria, 30 LPRA sec. 2270. Véase SLG Pérez Rivera v. Registradora, 189 DPR 729 (2013). Cónsono con lo anterior -y con el hecho de que el registrador no es un juez- hemos resuelto que los registradores no están facultados para declarar la existencia de un derecho dudoso

---

[7] Los hechos que dieron paso a la controversia ante nuestra consideración ocurrieron durante la vigencia de la Ley Hipotecaria y del Registro de la Propiedad, Ley Núm. 198 de 8 de agosto de 1979 y su Reglamento. La Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Ley Núm. 210-2015, 30 LPRA secs. 6001-6561, entró en vigor el 7 de marzo de 2016, luego de que se presentó la Escritura.

entre partes. Gasolinas PR v. Registrador, 155 DPR 652 (2001). Por otro lado, el ámbito de la calificación depende del tipo de documento que se presente. Rivera Rivera, op. cit., pág. 287. En comparación con los documentos judiciales o administrativos, al calificar documentos notariales el Registrador tiene facultades más amplias. U.S.I. Properties, Inc. v. Registrador, 124 DPR 448, 466 (1989).

Los registradores están facultados a solicitar que se produzcan documentos complementarios cuando los presentados están incompletos o no resultan suficientes para determinar la validez del documento que busca acceso al Registro. Íd., pág. 462. Específicamente hemos reconocido que esta facultad está limitada a circunstancias en las que: (1) una ley o reglamento requiera el documento para la inscripción que se solicita; (2) del documento que se calificará surja causa para creer que es inválido; (3) el documento que se calificará no refleja su entera validez. Íd.; Rivera Rivera, op. cit., pág. 281.

B.   Derecho de Acrecer

El derecho de acrecer es el derecho de aquellos herederos llamados a una misma porción de la herencia de incrementar su cuota cuando la porción de otro heredero queda vacante. E. González Tejera, Derecho de sucesiones, San Juan, Ed. UPR, 2001, T. II, pág. 354. En nuestro ordenamiento, dicha figura busca cumplir con la presunta voluntad del testador que llamó conjuntamente a varios herederos a una misma porción de la herencia, de que se sustituyan los unos a los otros y que cada

uno pueda ser llamado a la totalidad de lo que al grupo corresponda. Íd., págs. 355-356.

En la sucesión testada, el derecho de acrecer surge cuando: (1) dos o más son llamados a una misma porción de la herencia *sin especial designación de partes*; (2) uno de estos no quiere o no puede recibirla; y (3) no hay disposición del testador en la que se le excluya. Íd.; Art. 937 del Código Civil, 31 LPRA sec. 2752. Aquellos herederos con derecho de acrecer asumirán todos los derechos y obligaciones que tendría el que no quiso o no pudo recibir la porción de la herencia que quedó vacante. Art. 939 del Código Civil, 31 LPRA sec. 2753. Cuando no tenga lugar el derecho de acrecer y no se haya designado heredero sustituto, la porción vacante de la herencia pasará "a los herederos legítimos del testador". Art. 941 del Código Civil, 31 LPRA sec. 2756.

Para determinar si surge el derecho de acrecer, lo fundamental es la voluntad del testador sobre el particular. J. Castán Tobeñas, Derecho Civil Español, Común y Foral, 9na ed., Ed. Reus, S.A., 2015, T. 6, V. II, pág. 176. Por ello, como norma supletoria, el articulado sobre el derecho de acrecer solo aplica en la medida en que no sea contrario a lo expresado en el testamento. Véase Serrano v. Roca Vda. de Coy, 43 DPR 670 (1932); Art. 624 del Código Civil, 31 LPRA sec. 2129.

En el pasado hemos tenido la oportunidad de expresarnos en torno a la naturaleza de este derecho y cuándo surge. En Calimano Díaz v. Calimano, 103 DPR 123 (1974), el testador instituyó como única y universal heredera a su señora madre y como herederos sustitutos a sus dos hermanos "por partes iguales". Íd., pág. 124. La madre y uno de los herederos instituidos premurió al testador. La cuestión a decidir entonces era si los cuatro hijos del heredero que premurió tenían derecho de representación para

recibir la porción de la herencia que le hubiese correspondido a su padre o si el heredero que sobrevivió tenía derecho de acrecer.

Al resolver la controversia analizamos la relación entre el derecho de acrecer y el derecho de representación, y concluimos que este último "es precepto exclusivo de la [sucesión] legítima", por lo que no se produce en la sucesión testada. Íd., pág. 125. Razonamos que en el contexto de la sucesión testada el testador tiene a su haber la figura de la sustitución testamentaria para expresar su voluntad en torno a potenciales porciones vacantes de la herencia, por lo que la figura del derecho de representación resulta innecesaria e inaplicable.

Resuelto el asunto sobre el derecho de representación, procedimos a determinar si surgía el derecho de acrecer o si se debía abrir la sucesión intestada para disponer de la porción vacante. Conforme al texto del artículo 938 del Código Civil, 31 LPRA sec. 2753, concluimos que el testamento en cuestión no incluyó designación especial de partes, ya que los dos herederos voluntarios fueron llamados a partes iguales de la herencia. Cónsono con lo anterior, resolvimos que ante la ausencia de un sustituto testamentario la porción de la herencia que quedó vacante acreció la cuota del restante heredero voluntario. Íd., pág. 127.

En Fernández v. Fernández, 152 DPR 22, 48 (2000), la controversia era si el legado de una esposa legataria que premurió al testador se refundió en la masa hereditaria o si acreció la porción de los demás legatarios.[8] El testador legó a su hijo de crianza una participación en la herencia igual a la de

---

[8] El derecho de acrecer surge entre legatarios bajo los mismos términos que los herederos. Art. 942 del Código Civil, 31 LPRA sec. 2757.

sus hijos naturales y, por otro lado, legó a su esposa un monto equivalente al tercio de libre disposición.  Determinamos que la distribución de los legados empleada por el testador constituyó una especial designación de partes. Así, resolvimos que no surgió el derecho de acrecer del hijo de crianza sobre el legado de la esposa del causante, por lo que dicho legado se refundió en la masa hereditaria.

Al resolver estos casos no fue necesario profundizar en torno al alcance de la frase "especial designación de parte" que utiliza el artículo 937 del Código Civil, supra, al establecer los requisitos para que surja el derecho de acrecer. El artículo 938 intenta arrojar luz sobre el particular, al establecer que:

> [s]e entenderá hecha la designación por partes sólo en el caso de que el testador haya determinado expresamente una cuota para cada heredero.

> La frase "por mitad o por partes iguales" u otras que aunque designen parte alícuota, no fijen ésta numéricamente o por señales que hagan a cada uno dueño de un cuerpo de bienes separado, no excluyen el derecho de acrecer. Art. 938 del Código Civil, 31 LPRA sec. 2753.

Según el profesor González Tejera, del texto del artículo 938 queda claro que cuando el testador solo deja bienes específicos para cada heredero existe designación especial de partes y no surge el derecho de acrecer. González Tejera, op. cit., pág. 356. Queda igualmente claro del texto del referido artículo que si el testador no establece cuota alguna o hace un llamado totalmente indiferenciado en torno a bienes particulares de la herencia sí surge el derecho de acrecer. Íd.

No obstante, surge una "'extensa área gris' entre estos dos extremos" que el artículo 938 no aclara. Íd. Esto resulta en que permanezca "en penumbras" el "alcance de la expresión 'sin

especial designación de partes'". E. Martínez Moya, *El Derecho Sucesorio Puertorriqueño*, 67 Rev. Jur. UPR 1, 69-71 (1998).

En lo pertinente, el Tribunal Supremo de España ha evaluado el alcance de esa frase en varias ocasiones.[9] En la Resolución del 4 abril de 1903, resolvió que un testamento en el cual se dividió la herencia en dos mitades -una de las cuales se dividió en tres partes iguales, asignándose la primera a un heredero, la segunda a otro y la tercera a los cuatro hijos de uno de estos- no contiene una especial designación de parte que excluya el derecho de acrecer. Aclaró que, al asignar una tercera parte de mitad de la herencia a cuatro personas, mientras que las otras dos terceras partes fueron asignadas una a cada persona, el testador no separó un cuerpo de bienes específico de la herencia para cada heredero, por lo que no excluyó el derecho de acrecer. RTS 4 abril 1903 (35 Jurisprudencia Civil 495).

En la Sentencia del 5 de junio de 1917, el Tribunal Supremo de España expresó que una designación "por iguales novenas partes" es el equivalente a la frase de partes iguales empleada por nuestro artículo 938 y no fija "expresamente una cuota en cantidad, en fincas o en otra clase determinada de bienes, o por otras señales que hagan a cada uno de los herederos dueño de un cuerpo de bienes separados". STS 5 junio 1917 (58 Jurisprudencia Civil 478). En otras palabras, se determinó que el testador no excluyó el derecho de acrecer al así distribuir la herencia.

Por otro lado, en la Sentencia del 6 noviembre 1962, una testadora atribuyó sendos tercios del caudal a dos hermanos y el otro a tres sobrinos, previa manifestación de que los instituía por partes iguales. STS 6 noviembre 1962 (RJ 1962, 4192). El

---

[9] Los artículos 937 y 938 del Código Civil, supra, son equivalentes a los artículos 982 y 983 del Código Civil de España.

máximo foro español sostuvo que la intención de la testadora fue ordenar que unos sucedan por cabezas y otros por estirpe, por lo que no excluyó el derecho de acrecer. Advirtió que la designación de parte alícuota, aunque sea numérica, no excluye el derecho de acrecer.

Según Albaladejo, un estudio de esta jurisprudencia revela que el criterio rector en los tres casos fue si en el testamento se designó un cuerpo de bienes separado para cada heredero. M. Albaladejo, Comentarios al Código Civil y compilaciones forales, Madrid, Ed. Edersa, 1998, T. XIII, Vol. II, pág. 471. No obstante, La Cruz aclara que en estos casos el Tribunal Supremo de España tuvo ante sí lo que él denomina acrecimiento por grupos. Véase La Cruz, op. cit., págs. 51-52. Según La Cruz, el texto del artículo 983 permite el acrecimiento dentro de grupos particulares, con preferencia a otro más general entre las personas y estirpes instituidas conjuntamente. Íd.

C.   Tutela testamentaria

La tutela es una institución jurídica cuyo propósito es proteger y cuidar la persona o patrimonio de aquellos que están imposibilitados de gobernarse a sí mismos debido a su incapacidad legal. Fernández Sánchez v. Fernández Rodríguez, 142 DPR 275, 280 (1997) citando a F. Puig Peña, Compendio de Derecho Civil Español, Ediciones Pirámide, S.A., Madrid, 1976, págs. 517-518; véase Art. 167 del Código Civil, 31 LPRA sec. 661.

El Código Civil permite que cualquier persona que deje un legado o herencia a un menor de edad o incapacitado nombre un tutor para la administración de dichos bienes. Art. 175 del Código Civil, 31 LPRA sec. 682; Mercado v. Mercado, 66 DPR 811, 821 (1947).[10] La existencia de patria potestad o de otro tipo de tutela sobre el incapaz no excluye el nombramiento de un tutor testamentario al amparo del artículo 175 del Código Civil. Mercado v. Mercado, supra; véase Díaz v. Corte, 58 DPR 88, 91 (1941).

El Código Civil explícitamente establece que el nombramiento de este tipo de tutor "no surtirá efecto hasta que la herencia o el legado haya sido aceptado por el padre, la madre o el tutor del menor, con la aprobación de la sala competente del Tribunal de Primera Instancia". Art. 175 del Código Civil, supra (énfasis suplido); véase Díaz v. Corte, supra, pág. 91. Según Manresa y Navarro, antes de brindar esta autorización, el tribunal "deberá escrupulosa y serenamente apreci[ar] el pro y el contra de las consecuencias [para el potencial pupilo] originadas por una aceptación de herencia". J.M. Manresa y Navarro, Comentarios al Código Civil Español, 7ma ed. rev., Madrid, Ed. Reus, 1957, T. II, págs. 285.

---

[10] El antiguo artículo 207 del Código Civil español, versión análoga de nuestro artículo 175, fue derogado a favor del actual artículo 227, el cual sustituye el uso del término "tutor" por "administrador", lo cual es cónsono con las facultades que confiere la figura. M. Albaladejo, Comentarios al Código Civil y compilaciones forales, Madrid, Ed. Edersa, 1985, T. IV, pág. 274. Aun así, le son aplicables las normas de la tutela en lo que escape el ámbito de la administración del legado. Íd.

Expuesto el derecho aplicable, resta únicamente atender la controversia ante nos.

III

En su calificación final, la Registradora señaló como segunda falta que no se presentó la Declaratoria de Herederos de la causante ante la premoriencia de uno de los herederos voluntarios.[11] Los peticionarios objetaron dicho requerimiento ya que entienden que la porción vacante de la herencia acreció la porción de los herederos que sobrevivieron a la causante, por lo que resulta innecesario quiénes son sus herederos legítimos.

Para disponer de esta objeción, debemos resolver a quién le corresponde la porción de la herencia que quedó vacante al premorir el señor Carrillo Norat. Esto requiere que determinemos si la testadora hizo una designación especial de partes, lo cual excluye el derecho de acrecer o si, por el contrario, llamó a los herederos a una misma porción de la herencia sin especial designación de partes, de modo que surja el derecho de acrecer. Arts. 937 y 938 del Código Civil, supra.

Por su importancia a la presente controversia, a continuación reproduzco la cláusula pertinente del testamento, en la que la testadora:

> Instituye por sus únicos y universales herederos, en la totalidad de sus bienes, en un cincuenta por ciento (50%) de su caudal relicto, a su antes mencionado hermano legítimo de doble

---

[11] *Apéndice*, pág. 1. Dicho proceder parece estar fundamentado en el artículo 941 del Código Civil, 31 LPRA sec. 2756, el cual establece que cuando no surge el derecho de acrecer, la porción vacante de la herencia pasa a los herederos legítimos del causante.

vínculo, don Francisco Carrillo Norat quien es mayor de edad, viudo, propietario y vecino de Ponce, Puerto Rico y en cuanto al otro cincuenta porciento de su caudal relicto y por partes iguales, a los hijos de su otro hermano ya difunto, quienes son; don Carlos Roberto Carrillo Vázquez, mayor de edad, casado, propietario y vecino de Orlando Florida, Estados Unidos de Norteamérica; don Francisco José Carrillo Vázquez, mayor de edad, soltero, propietario y vecino de Ponce, Puerto Rico; don José Enrique Carrillo Vázquez, mayor de edad, soltero, propietario y vecino de Ponce, Puerto Rico y doña María de los Ángeles Carrillo Vázquez, mayor de edad, casada, abogada y vecina de Ponce, Puerto Rico; disponiendo la testadora compareciente que esta institución voluntaria de herederos queda gravada y sujeta al reconocimiento y pago por los antedichos herederos de los legados voluntarios que ella constituye y ordena más adelante.[12]

Los peticionarios resumen dicha cláusula de la siguiente forma: la testadora dejó mitad de su herencia a su hermano Francisco Carrillo Norat y la otra mitad a los hijos de su otro hermano, el cual falleció antes de otorgarse el testamento. En ese sentido, argumentan que la distribución es "por mitad o por partes iguales", lo cual no excluye el derecho de acrecer según el artículo 938 del Código Civil. En torno al hecho de que las cuotas de los peticionarios son diferentes a la cuota de Francisco Carrillo Norat, sostienen que ello de por sí no excluye el derecho de acrecer (ya que la herencia fue distribuida en mitades, una de las cuales fue dividida en partes iguales) y arguyen que así resolvió el Tribunal Supremo de España en la Sentencia del 6 de noviembre de 1962.

Además, señalan que la testadora no rechazó el derecho de acrecer, ni explícitamente mediante una prohibición a

---

[12] Apéndice, pág. 17.

tales efectos, ni implícitamente ya que no designó herederos sustitutos. Finalmente, llaman la atención al hecho de que la testadora no designó bienes en específico para cada heredero, aun teniendo la oportunidad de hacerlo debido al listado que incluyó en el testamento de los diferentes bienes muebles e inmuebles que integran el caudal.

Por su parte, la Registradora argumenta que no se cumplen las condiciones para que surja el derecho de acrecer. En primer lugar, fundamenta su postura en que la testadora designó expresamente una cuota de la herencia para cada heredero, lo cual entiende que de por sí excluye el derecho de acrecer. Además, argumenta que el artículo 938 del Código Civil, supra, establece que fijar numéricamente las partes de cada heredero excluye el derecho de acrecer. Por consiguiente, sostiene que al hablar de "50 porciento", la testadora negó el derecho a sus herederos.

Finalmente, refuta el argumento de los peticionarios de que la designación que hizo la testadora es el equivalente a haber designado "por mitad o por partes iguales", ya que la porción que la testadora dejó a cada sobrino (una cuarta parte de la mitad de la herencia) es distinta a la que dejó al hermano que le premurió.

El primer argumento de la Registradora, en torno a que la mera designación de cuotas para cada heredero implica que quedó excluido el acrecimiento, parecería encontrar apoyo en el texto del artículo 938. Según la referida disposición, se entenderá que

se hizo una especial designación de partes "en el caso de que el testador haya determinado expresamente una cuota para cada heredero". Sin tomar en cuenta el resto del artículo 938 y el artículo 937, parecería que la testadora en este caso excluyó el derecho de acrecer, ya que designó una parte de la herencia para cada heredero. Véase. P. Beltrán de Heredia, El Derecho de Acrecer, Ed. Rev. De Derecho Privado, Madrid (1956), págs. 100-101.

No obstante, según Albaladejo, el criterio decisivo para determinar si existe el derecho de acrecer es si los herederos fueron llamados solidariamente a una misma cosa o porción de la herencia. M. Albaladejo, op. cit., pág. 430. Una institución de herederos es solidaria cuando no se separa la porción de cada uno de la de los otros. Íd., pág. 439. Esta postura entiende que el factor decisivo para determinar si existe el derecho de acrecer es si se designó un cuerpo de bienes separado para cada heredero, según implica el final del texto del artículo 938 al disponer que hacer "a cada uno dueño de un cuerpo de bienes separado" excluye el derecho de acrecer. Art. 938 del Código Civil, supra.

Una lectura integrada de los artículos 937 y 938 atiende el primer argumento de la Registradora, ya que el artículo 938 claramente exige algo más que una mera distribución abstracta de la herencia, aun cuando se especifique una "cuota" para cada heredero. Procede entonces abordar el segundo argumento de la Registradora, a los efectos de que la testadora fijó la cuota de cada heredero "numéricamente", lo cual según el artículo 938 parecería implicar que hizo a cada heredero dueño de un cuerpo de bienes separado.

Sobre este particular, aunque existen diversas posturas, entiendo que es más razonable la postura de la doctrina

mayoritaria, la cual razona que la palabra "numéricamente" se refiere a una cantidad determinada y concreta y no a una porción alícuota de la herencia. Véanse J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1976, T. 5, V. II, págs. 382-383; J.L. La Cruz Berdejo y otros, Elementos de Derecho Civil: Sucesiones, 4ta ed., Madrid, Ed. Dykinson, 2009, Vol. V, pág. 50; Albaladejo, op. cit., pág. 439.

Esta postura es la que mejor armoniza lo antedicho sobre el uso de la palabra "numéricamente" con la parte del texto del artículo 938 que establece que designar porciones por mitades o partes iguales no excluye el derecho de acrecer. Lo contrario "llevaría al absurdo de que la mención innecesaria de un número, que no puede obedecer a ningún designio especial en la mente de la testadora, sirviera para eliminar una conjunción que realmente existe". La Cruz Berdejo, op. cit., pág. 50; véase además J.B. Vallet de Goytisolo, Estudios de Derecho Sucesorio, Madrid, Ed. Montecorvo, 1980, Vol. I, pág. 123. El profesor González Tejera coincide plenamente con este planteamiento:

> [E]s ilógico suponer que la mención de un número, como instituir a cinco en una quinta parte para cada uno, que no obedece a voluntad especial del causante, sirva para eliminar el llamamiento solidario que como cuestión de hecho está presente, pues en nada se diferencia una disposición así fraseada de otra por la cual el testador ordena que la herencia la reciban sus cinco herederos instituidos por partes iguales o sin hacer atribución especial para cada uno.[13]

Esto nos lleva al último argumento de la Registradora, el cual toca un tema altamente debatido entre dos sectores de la doctrina. La Registradora arguye que la parte del artículo 938 que dice que una designación por mitades o partes iguales no excluye el derecho de acrecer no es de aplicación al testamento

---

[13] González Tejera, op. cit., págs. 356-357.

en controversia debido a que la testadora no dividió su herencia en partes iguales, sino que designó "50 por ciento" para su hermano y una cuarta parte del otro "50 porciento" para cada uno de sus cuatro sobrinos, o 12.5 por ciento cada uno.

La esencia del argumento de la Registradora es que la designación de partes alícuotas diferentes para cada heredero implica una distribución lo suficientemente diferenciada como para designar una parte separada de la herencia para cada uno.

Según Castán, la postura mayoritaria dentro de la doctrina, a la cual se une La Cruz y el profesor González Tejera, es del criterio que una designación de partes alícuotas diferentes constituye una designación especial de partes. Castán, op. cit., pág. 180; véase además La Cruz Berdejo y otros, op. cit., pág. 30; González Tejera, op. cit., pág. 356.

Por otro lado, un sector creciente de la doctrina,[14] liderado por Albaladejo y del cual forman parte Puig Brutau y la profesora Martínez Moya, entiende que siempre que haya un llamamiento conjunto o solidario sobre una misma cosa o porción del caudal, debe surgir el derecho de acrecer "independientemente de si la participación de cada quien se expresó en cuotas iguales o desiguales". Martínez Moya, supra, págs. 69-71; Puig Brutau, op. cit., págs. 382-383; Albaladejo, op. cit., pág. 457. Esta postura se fundamenta con especial énfasis en la parte del artículo 938 que implica que existe designación especial de parte cuando el testador utiliza "señales que hagan a cada uno un dueño de un cuerpo de bienes separado". Íd.

---

[14] Según Albaladejo "la mayoría de los autores modernos son favorables" a su postura y, en general, entiende que entre la doctrina "moderna" que él postula y la "antigua" hay un empate de opiniones. M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Edersa, 1998, T. XIII, Vol. II, pág. 461.

Como podemos ver, la controversia sobre si una distribución en partes alícuotas desiguales constituye una designación especial de partes ha dividido a la doctrina. No obstante, aunque de primera vista parecería que para atender el argumento de la Registradora debemos asumir una postura sobre el particular, lo cierto es que -contrario a lo argumentado por la Registradora- la controversia ante nuestra consideración no envuelve una distribución de la herencia en partes alícuotas verdaderamente diferentes.

En este caso, la testadora designó una mitad de su herencia para su hermano y la otra "por partes iguales, a los hijos de su otro hermano ya difunto". Apéndice, pág. 17. La identificación posterior de los nombres de cada uno de estos hijos del otro hermano ya difunto de la testadora no se sobrepone al hecho de que la testadora claramente les asignó, en conjunto, mitad de la herencia, la cual sería distribuida en partes iguales.

Esta distribución ilustra lo que La Cruz denomina acrecimiento por grupos. Según La Cruz, el artículo 937 permite que un testador distribuya porciones de la herencia a distintos grupos de herederos, los cuales tienen preferencia a otro más general entre las personas y estirpes conjuntamente instituidas. Esta distinción es de particular importancia, ya que como mencionamos anteriormente, La Cruz se une al sector de la doctrina que entiende que distribuir la herencia en partes alícuotas diferentes implica una designación especial de partes.

Evidentemente para La Cruz un llamado en el que la herencia se divide en partes iguales entre grupos, pero que no necesariamente cada heredero recibe la misma porción, es materialmente distinto a uno en el que la herencia meramente se distribuyó en partes alícuotas desiguales.

El Tribunal Supremo de España ha reconocido en varias ocasiones que un testador puede dividir su herencia en partes iguales entre distintos grupos sin excluir el derecho de acrecer, aun cuando esto implique que no todos los herederos recibieron la misma porción. Llama la atención la Sentencia del 6 noviembre 1962, la cual atendió una controversia muy similar a la presente, ya que la testadora designó sendos tercios de la herencia para dos herederos y un tercio para otros tres herederos. El Tribunal Supremo español resolvió que esto no implicó una especial designación de partes, ya que la intención de la testadora fue que su herencia fuera dividida en partes iguales entre sus tres hermanos, pero como uno premurió dejó el tercio correspondiente de la herencia a los hijos de dicho hermano.

Al determinar que en el testamento bajo estudio no se distribuyó la herencia en partes alícuotas diferentes, sino más bien en dos mitades, entiendo que ambos sectores de la doctrina, tanto los que postulan que una designación por partes alícuotas desiguales excluye el derecho de acrecer como los que argumentan que el criterio rector debe ser si se designó un cuerpo de bienes separado para cada heredero,

coincidirían en que la testadora no excluyó el derecho de acrecer. Aunque por razones distintas a La Cruz, la postura adelantada por Albaladejo concluiría que en el presente caso no se excluyó el derecho de acrecer, ya que la testadora no incluyó disposición alguna en el testamento que haga a cada heredero dueño de un cuerpo de bienes separado.

Luego de una lectura detenida del testamento y de acuerdo a la normativa establecida en el Código Civil sobre cómo interpretar la voluntad del testador en torno al derecho de acrecer, es forzoso concluir que la intención de la testadora fue que, de surgir una vacante, esta acreciera a la porción de los demás herederos.

Por todo lo anterior, erró la Registradora al exigir la Declaratoria de Herederos de la testadora como condición para la inscripción de la Escritura, ya que la porción vacante de la herencia acreció la cuota de los peticionarios.[15]

IV

La tercera y última falta señalada versa sobre la ausencia de un documento complementario que acredite la

---

[15] Cabe resaltar que, contrario a lo que plantea la Opinión de conformidad en parte y disidente en parte, verificar si una cláusula testamentaria dispone para un llamamiento solidario no es una tarea ajena a la función calificadora del Registrador. Lo anterior solo requiere que el Registrador valide que el contenido del derecho hereditario que se pretenda inscribir sea cónsono con las cláusulas del testamento en virtud del cual se busca inscribir ese derecho. La naturaleza del llamamiento surge del texto mismo de las cláusulas testamentarias cuya inscripción se solicita; no requiere la intervención de los tribunales para su constatación. Por tanto, lejos de obligarlos a declarar la existencia de un derecho dudoso entre las partes, únicamente se requiere que los Registradores lleven a cabo un análisis que no dista de las operaciones registrales requeridas para inscribir cualquier derecho hereditario, aun en contextos en que no está en juego el derecho a acrecer.

capacidad representativa de María de los Ángeles Carrillo Vázquez para aceptar la herencia y comparecer a la escritura como tutora testamentaria de Francisco Carrillo Díaz, incluyendo la autorización judicial de la aceptación del legado.

Según reseñado, María de los Ángeles Carrillo Vázquez, fue nombrada tutora testamentaria de Francisco Carrillo Díaz, para administrar el legado, de manera que garantice su mejor cuidado y atención. No le facultó, ni le pudo haber facultado, para aceptar el legado en nombre de este.

Los peticionarios rechazan que sea necesario obtener dicha autorización debido a que el legado dejado fue de un bien mueble, lo cual, según postulan, implica que queda fuera de las facultades calificadoras de la Registradora. Añaden que en la Escritura Núm. 80 se dio fiel cumplimiento a la voluntad de la testadora en cuanto al legado dejado a Francisco Carrillo Díaz y que en el presente caso no se está llevando proceso alguno en los tribunales cuestionando la validez de la escritura bajo el fundamento de si era o no necesaria la Autorización Judicial previo a la aceptación del legado. Finalmente, arguyen que los derechos del legatario no fueron socavados y la escritura de partición de bienes no resulta lesiva a los mejores intereses del legatario.

En primer lugar, el argumento de que la falta de acreditación de la capacidad representativa de la tutora testamentaria excede las facultades calificadoras de la

Registradora es totalmente improcedente al tomar en cuenta el artículo 64 de la Ley Hipotecaria, supra (La "calificación comprenderá … la validez de los actos y contratos contenidos en tales documentos").

Los demás argumentos de los peticionarios no atienden la médula de la controversia: si se acreditó la capacidad representativa de la tutora testamentaria. No se hizo, según reconocen los peticionarios, lo cual incide directamente en la validez de la partición, ya que no surge la capacidad representativa de la tutora testamentaria para comparecer a la escritura y para suplir el consentimiento del legatario Francisco Carrillo Díaz a la partición de la herencia y recibo del legado. Véase *In re* Toro González II, 193 DPR 877, 890-891 (2015).

Al surgir la posible anulabilidad del instrumento debido a la ausencia del consentimiento de uno de los comparecientes, actuó correctamente la Registradora al exigir la acreditación de la capacidad representativa de María de los Ángeles Carrillo Vázquez como tutora testamentaria de Francisco Carrillo Díaz y para aceptar el legado en su nombre.

V

En vista de la discusión anterior, erró la Registradora al concluir que no surgió el derecho de acrecer de los peticionarios sobre la porción de la herencia que quedó vacante y, por consiguiente, exigir la declaratoria de herederos de la testadora. Por otro lado,

actuó correctamente al requerir documentos que acreditaran la capacidad representativa de María de los Ángeles Carrillo Vázquez para comparecer a la Escritura Núm. 80 de partición a nombre de Francisco Carrillo Díaz.[16]

Por los fundamentos que anteceden, estoy conforme con la Sentencia de este Tribunal en la que se revoca en parte y se confirma en parte la recalificación recurrida.

Maite D. Oronoz Rodríguez
Jueza Presidenta

---

[16] Resulta innecesario expresarnos sobre la primera falta señalada por la Registradora ya que los peticionarios aceptaron que fue cometida.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| María de los Ángeles Carrillo Vázquez; José Enrique Carrillo Vázquez; Francisco José Carrillo Vázquez y Carlos Roberto Carrillo Vázquez | | |
| Peticionarios | | *Recurso* |
| v. | RG-2017-0001 | *Gubernativo* |
| Hon. María Rodríguez Cintrón | | |
| Recurrida | | |

**Opinión de conformidad en parte y disidente en parte emitida por el Juez Asociado señor RIVERA GARCÍA.**

En San Juan, Puerto Rico, a 5 de junio de 2019.

## I

La adjudicación de este caso debía estar guiada por varias premisas evidentes que varios compañeros y compañeras ignoran en un ejercicio de seguir presuntamente una corriente de comentaristas. *Primero,* que el **texto de la ley** es la intención por excelencia de la norma que se quiso establecer.[17] *Segundo,* que "toda disposición testamentaria deb[e] entenderse en el **sentido literal** de sus palabras, **a no ser que aparezca claramente que fue otra la intención del testador**". (Énfasis y subrayado suplido).[18] *Tercero*, el

---

[17] *Romero Barceló v. ELA,* 169 DPR 460, 476-477 (2006). El Art. 14 del Código Civil de Puerto Rico, 31 LPRA sec. 14, establece que "[c]uando la ley es clara [y] libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu".

[18] *Fernández v. Fernández,* 152 DPR 22, 32 (2000).

efecto de la decisión en el ejercicio de la notaría, en las calificaciones que hace un Registrador de la Propiedad, y que nuestra función es resolver controversias, no ser creadores de ellas.

Si una ley establece la norma de interpretación para una figura específica, nuestra obligación es seguir lo preceptuado, pues, además de que estamos vinculados por ella, es de esperarse que otros profesionales lo han hecho. Se trata, en efecto, de un sentido de **uniformidad y certeza** en la comunidad jurídica y la ciudadanía de que no modificaremos su intención, especialmente en aspectos testamentarios.

La figura del acrecimiento en los testamentos está regulada mediante una norma específica y clara. El Código Civil de Puerto Rico instituye una regla de interpretación mediante la cual la distribución de una herencia **dependerá de los términos o palabras que se utilicen en la redacción del testamento** y, por tanto, se limita el derecho de acrecer a que la designación que se efectúe de la porción de la herencia cumpla con ciertos requisitos. Que esta figura aplique se condiciona a que no se haga una designación **numéricamente** o con señales que separen el llamamiento de los herederos y se incumpla, por consiguiente, con el requisito de vocación conjunta o solidaria para que el acrecimiento se produzca sobre una

porción vacante de la herencia.[19] Es que la ley no permite ningún otro "acrecimiento" que este, el de los llamados conjuntamente.

Ante este hecho, en el caso de autos no procedía el derecho de acrecer. La cláusula testamentaria en controversia distribuyó y designó numéricamente ⸺de forma fija⸺ las porciones de la herencia. Esta no hizo un llamamiento conjunto entre varias personas sobre la parte vacante, según disponen los Arts. 937 y 938 del Código Civil de Puerto Rico, 31 LPRA secs. 2752-2753. Es decir, la causante **designó la porción que quedó disponible como una parte o cuerpo <u>separado, determinado y concreto</u> de la herencia para un solo sucesor**, lo cual excluye el derecho de acrecer para los sucesores llamados sobre otras partes o cosas de la herencia. Pese a lo anterior, para justificar que en este caso procede el derecho de acrecer, la sentencia de este Tribunal, así como la opinión de conformidad emitida por la Jueza Presidenta Oronoz Rodríguez, enmiendan el testamento, a la vez que modifican e invierten el lenguaje y las condiciones que establece el Código Civil. Veamos.

**II**

**A. *Interpretación de los testamentos***

---

[19] P. Beltrán de Heredia, *El Derecho de Acrecer,* Madrid, 1964, Ed. Revista de Derecho Privado, págs. 92-93 ("[P]ara que una vocación sea solidaria hemos dicho que se precisa el llamamiento de varios herederos a una misma herencia **sin asignar una parte concreta y especial** a cada uno de ellos. La vocación solidaria es el supuesto de hecho necesario para que se verifique el acrecimiento al producirse una vacante") (Énfasis suplido).

Como todo negocio, los testamentos tienen su génesis en establecer la voluntad del otorgante, la cual se declara **a través de las formalidades y solemnidades impuestas por la ley**.[20] Sin embargo, por su propia naturaleza, los testamentos cuentan con características particulares.[21]

La problemática más marcada respecto a la interpretación de un testamento radica en que esta tiene lugar una vez el testador ha fallecido.[22] Ello impide que el otorgante pueda participar del juicio interpretativo y obliga a que otro individuo intente reconstruir lo que el testador "efectivamente quiso, pero teniendo en cuenta siempre que en el testamento se encuentra una declaración de voluntad que ha quedado cristalizada".[23] Por esa dificultad, el Art. 624 del Código Civil establece la forma más efectiva para interpretar estos instrumentos públicos, a saber:

> Toda disposición testamentaria **deberá entenderse en el sentido literal de sus palabras**, a no ser que aparezca <u>claramente</u> que fue otra la voluntad del testador. En caso de duda se observará lo que parezca más conforme a la intención del testador, según el tenor del mismo testamento. (Énfasis y subrayado suplido).[24]

Lo instituido en el Art. 624, conforme reconocimos en *Lacari y otros v. Dorna*, 148 DPR 453, 461 (1999), "no

---

[20] *Fernández v. Fernández,* supra, pág. 32; *Moreda Toledo v. Rosselli y otros,* 150 DPR 473, 480 (2000); L. Díez-Picazo, *Sistema de Derecho Civil: derecho de familia y derecho de sucesiones*, 7ma ed., Madrid, Ed. Tecnos, 1997, Vol. IV, pág. 459.

[21] L. Díez-Picazo, *op. cit.*, pág. 459.

[22] *Lacari y otros v. Dorna,* 148 DPR 453, 461 (1999).

[23] Íd.; Díez-Picazo, *op. cit.*, pág. 459.

[24] Art. 624 del Código Civil de Puerto Rico, 31 LPRA sec. 2129.

significa que su intérprete deba indagar lo que quiso el testador como tarea previa a toda lectura de [la] disposición testamentaria".[25] Esa no es la forma correcta de interpretar un testamento. **Lo primero es examinar <u>el texto expreso</u> de la disposición testamentaria en controversia.**[26] Así pues, si la cláusula del testamento es clara y, por tanto, la voluntad resulta diáfana de la lectura literal de esta, la interpretación es más que sencilla.[27] En este supuesto, acorde con lo que manda el Art. 624, *supra*, compete seguir al pie de la letra las palabras del causante.

Únicamente si las dudas sobre la voluntad del testador persisten luego de examinada la disposición testamentaria en virtud de la norma mencionada, ya sea porque es oscura o ambigua, o porque esté consignada en forma imprecisa, deficiente o contradictoria, entonces procede observar lo que parezca más conforme a la intención del testador "según *el tenor del mismo testamento", es decir, las demás cláusulas del instrumento*.[28] Esta metodología se denomina *medios intrínsecos de prueba* en la interpretación testamentaria.[29] Entonces, de no poderse lograr el objetivo

---

[25] *Lacari y otros v. Dorna,* supra, pág. 461.

[26] *Fernández v. Fernández*, supra, pág. 32; *Lacari y otros v. Dorna,* supra, pág. 461.

[27] *Lacari y otros v. Dorna,* supra, pág. 461. Véanse: *Moreda Toledo v. Rosselli y otros*, supra; *Torre Ginés v. ELA*, 118 DPR 436 (1987).

[28] Art. 624 del Código Civil de Puerto Rico, 31 LPRA sec. 2129. Véase *Lacari y otros v. Dorna,* supra, págs. 461-462.

[29] *Lacari y otros v. Dorna,* supra, pág. 462, en el cual expresamos que "[a]lgunos de estos medios de interpretación son: el *lógico*, con énfasis en el elemento racional; el *sistemático*, con énfasis en la totalidad de las declaraciones testamentarias, y el *teológico*, con

interpretativo de encontrar la voluntad del testador, podemos acudir a la evidencia extrínseca que pueda presentarse para desenterrar esa voluntad.[30]

Claro está, estos medios de interpretación de los testamentos **no permiten hallar la voluntad del testador a través de la suma de expresiones o palabras no utilizadas o incorporadas en su texto. Tampoco admite eliminar lo expresado** y suplantarlo por algo no contenido en el mismo. L*a interpretación del testamento no se extiende a incluir lo no dicho y a dar por cumplido lo omitido.*[31] Es que, sin importar la forma o mecanismo mediante el cual se interpreta el testamento, este *"no puede sustituir la voluntad declarada del causante por otra no declarada en lo absoluto".*[32] De hacerlo, pudiéramos estar promoviendo la litigación excesiva, con el aumento correspondiente en los costos sociales y en los procesos judiciales o administrativos.[33] Además, llevaríamos a cabo un juicio **especulativo** y asumiríamos el riesgo descomunal de

---

énfasis en el verdadero sentido que impulsó la voluntad del testador. *Torre Ginés v. ELA*, supra. El propósito fundamental de estos mecanismos consiste en tratar de derivar la voluntad real del testador de un análisis integrado del testamento; es decir, que no se analicen las disposiciones testamentarias considerando frases o palabras aisladas, sino la totalidad de la declaración de la voluntad, pues todas las cláusulas del testamento en su conjunto integran la verdadera voluntad del testador". Íd. Véase J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1977, T. V, Vol. II, págs. 249-252.

[30] *Lacari y otros v. Dorna,* supra*,* pág. 462.

[31] Íd., pág. 464. Véase *Rodríguez Sardenga v. Soto Rivera*, 108 DPR 733 (1979).

[32] Véase E. González Tejera, *Derecho de Sucesiones,* San Juan, Puerto Rico, Ed. UPR, 2002, Vol. II, 55-56.

[33] Véase *Lacari y otros v. Dorna,* supra*,* pág. 464. Véase, además, González Tejera, *op. cit.*, pág. 57.

tergiversar la voluntad del causante, cuando la que consta en el instrumento es distinta.

Al evaluar el ejercicio interpretativo es medular reiterar lo esbozado en *Lacari y otros v. Dorna,* supra, pág. 463, a los efectos de la intervención de un notario en la preparación y redacción de los testamentos. Allí señalamos que en la búsqueda de la voluntad del causante es preciso tomar en consideración el tipo de testamento otorgado. Expresamos que "[e]sto es así porque, por ejemplo, **en la redacción de un testamento abierto interviene un notario**". (Énfasis suplido). Reiteramos que

> [l]os notarios han de redactar los testamentos conforme a la voluntad del testador, adaptándola a las formalidades jurídicas para su eficacia. Por lo que, cuando el causante otorga un testamento abierto ante notario, **[e]ste es quien realiza la primera interpretación de la última voluntad del testador**. Los notarios, como **conocedores del Derecho** que son, al redactar un testamento abierto han de ir **refinando y moldeando las expresiones que allí se esbozan, de suerte que las palabras del testamento sean lo más fieles a lo querido por el testador**. (Énfasis y subrayado suplido).[34]

En ese sentido, según reconocimos, la figura del notario es un factor importantísimo a considerar en la interpretación de un testamento. Ignorar esto es un menoscabo a la función que realizan estos funcionarios, quienes deben ser guardianes de que el instrumento recoja y refleje la voluntad del otorgante. No es permisible presumir que estos redactan sin ningún cuidado un instrumento tan significativo como es aquel que distribuye

---

[34] *Lacari y otros v. Dorna,* supra, págs. 463-464. Véase, además, Puig Brutau, *op. cit.,* pág. 250.

el patrimonio trabajado durante toda la vida. Conocer el Derecho, y el uso de las palabras que se utilizan en virtud de este conocimiento ——las expresiones que se hacen constar en estos instrumentos públicos——, **son parte de las razones de que se exija que los notarios sean abogados en nuestra jurisdicción.**

Consiguientemente, en el caso de los testamentos abiertos o cerrados gana mayor envergadura el Art. 624 del Código Civil, *supra*, y la doctrina jurisprudencial de que, en primera instancia, estos instrumentos públicos deben entenderse en el sentido literal de sus palabras. Ante este hecho, hemos sido rigurosos en la manera que hemos tratado la forma, los términos y las expresiones que se utilizan en los testamentos, tanto para su validez como su interpretación.

### B. *Normas que aplican al derecho de acrecer*

No podemos perder de perspectiva que, por ser parte del testamento, las normas para el análisis e interpretación del derecho de acrecer ——así como otras figuras como la sustitución—— se fundamentan en la presunta voluntad del testador. Estas no son otra cosa que una manera en que el testador anticipa algún suceso que podría cambiar las circunstancias que estaban presentes al momento de otorgarse el testamento.[35] Por ello, como en la sucesión

---

[35] J.M. Manresa y Navarro, *Comentarios al Código Civil Español,* 7ma ed., Madrid, Instituto Editorial Reus, 1955, Tomo VII, Vol. I, pág. 372.

testada la voluntad del testador es ley preferente, este tiene la opción de prohibir expresamente la aplicación del derecho de acrecer, ya sea al nombrar un sustituto o establecer el destino especial de cada porción vacante, según dispone el Código Civil.[36] Por esto, y para esto, es que el Código establece la forma en que se debe hacer constar la voluntad del testador.

Ciertamente, el acrecimiento en las sucesiones tiene su origen en el derecho romano.[37] Ahora bien, distinto a la actualidad, en el derecho romano la sucesión testada era incompatible con la intestada.[38] En aquella época nombrar a un heredero conllevaba, necesariamente, un llamado a toda la herencia. De no llegar a heredar alguno de los llamados en la herencia, sin importar la manera que hubieran sido designados en el testamento, acrecía a los demás.[39] De esta

---

[36] Íd., pág. 367.

[37] J.R. Vélez Torres, *Curso de derecho civil: Derecho de sucesiones*, 2da ed. rev., San Juan, Universidad Interamericana de Puerto Rico, 1992, Tomo IV, Vol. III, pág. 434.

[38] Puig Brutau, *op. cit.*, pág. 375.

[39] Íd., págs. 375-376; J.L. Lacruz Berdejo & F. Sancho Rebullida, *Derecho de sucesiones*, 2da ed., Barcelona, Bosch, 1976, Vol. I, pág. 67 ("En el Derecho romano, donde rige la regla *nemo pro parte testatus, pro parte intestatus decedere potest*, la exclusión de la sucesión intestada sobreviene, automáticamente, por la existencia o subsistencia de cualquier heredero nombrado en testamento, aunque haya sido instituido sólo en una cuota, o incluso en una única cosa cierta"); J. Ossorio Morales, *Manual de sucesión testada*, Madrid, Instituto de Estudios Políticos, 1957, págs. 322-323. El acrecimiento se admitía, incluso, en los casos siguientes: "1.º Cuando el testador instituía un solo heredero en una parte alícuota de la herencia, como una tercera, cuarta, etc., caso en el cual le acrecía toda la porción restante, o la parte de ella no destinada especialmente a legados. 2.º Cuando el testador instituía un heredero dejándole o asignándole s[o]lo una cosa o varias cosas determinadas, pues también le correspondía la herencia íntegra. 3.º Cuando el heredero era instituido *in diem* o *ex die*, <<en cuyos supuestos se realizaba un derecho de acrecer, si no de cosa a cosa, como en los casos anteriores, por lo menos de *tiempo a tiempo*; es decir, que institu[i]do el heredero desde cierto día, *potestate juris*, se borraba la expresión del día, y quedaba la institución convertida en

manera, como una necesidad jurídica, mas no de la voluntad del causante, el acrecimiento evitaba la coexistencia de la sucesión testada e intestada.[40]

Al presente no existe esa incompatibilidad, pues los fundamentos legales en los cuales descansa el derecho de acrecer en Puerto Rico se encuentran en los Arts. 936-942 del Código Civil, 31 LPRA secs. 2751-2757. El Art. 937 establece los requisitos para el acrecimiento en la sucesión testamentaria, los cuales, de no cumplirse, no permitirían que entre en función esta figura.[41] Según estatuido, el derecho de acrecer en la sucesión testamentaria procede si: (1) dos o más son llamados a una misma herencia, o a una misma porción de ella, **sin especial designación de partes**; y (2) uno de los llamados muere antes que el testador, renuncia la herencia o es incapaz de recibirla.[42] De cumplirse cabalmente estas exigencias, entonces se daría el efecto de que los demás llamados conjuntamente adquieran lo que hubiera correspondido al instituido como sucesor causante, pero que resultó inhábil (*potencial sucesor-inhábil*).

---

pura, percibiendo en su consecuencia el institu[i]do la herencia, sin limitación alguna en cuanto al tiempo>>".

[40] González Tejera, *op. cit.*, págs. 354-355; Ossorio Morales, *op. cit.*, pág. 323.

[41] Vélez Torres, *op. cit.*, pág. 433. Véase Art. 937 del Código Civil de Puerto Rico, 31 LPRA sec. 2752.

[42] Art. 937 del Código Civil de Puerto Rico, 31 LPRA sec. 2752. Véase, además, Manresa y Navarro, *op. cit.*, pág. 368. Ha sido altamente debatido si el acrecimiento se puede producir en circunstancias adicionales a las mencionadas en el último requisito.

No cabe duda de que cuando en un testamento se deja una sola cosa o porción de la herencia a dos o más personas, sin expresa designación de partes, se crea un favoritismo sobre esa cosa o porción. Lo lógico es que la ley, para cumplir la voluntad que surge del testamento, sostenga esta preferencia y asigne a los demás llamados la vacante que hubiera correspondido al potencial sucesor-inhábil.[43]

A esos efectos, en cuanto a lo que constituye una designación especial de partes, el Art. 938 del Código Civil, *supra*, dispone diáfanamente que esta existe cuando el testador ha "**determinado expresamente una cuota para cada heredero**". (Énfasis y subrayado suplido).[44] Más adelante se aclara que "**[l]a frase 'por mitad o por partes iguales'** u otras que aunque designen parte alícuota, **no fijen ésta numéricamente o por señales** que hagan a cada uno dueño de un cuerpo de bienes separado, no excluyen el derecho de acrecer". (Énfasis y subrayado suplido).[45]

---

[43] Manresa y Navarro, *op. cit.*, págs. 367-368.

[44] Véase Vélez Torres, *op. cit.*, pág. 436 ("De manera que si el testador hace se limita instituir herederas a varias personas, **sin señalar la cuota que a cada una corresponderá en la herencia**, se da el derecho si una de las personas instituidas no puede o no quiere heredar") (Énfasis suplido).

[45] Art. 938 del Código Civil de Puerto Rico, 31 LPRA sec. 2753. El texto íntegro del Art. 938 expresa como sigue:

"Se entenderá hecha la designación por partes sólo en el caso de que el testador haya determinado expresamente **una cuota** para cada heredero.

La **frase** 'por mitad o por partes iguales' u otras que aunque designen parte alícuota, **no fijen [e]sta numéricamente o por señales** que hagan a cada uno dueño de un cuerpo de bienes separado, no excluyen el derecho de acrecer". (Énfasis suplido). Íd.

Nuestra casuística es escaza en cuanto a la interpretación y aplicación de estas disposiciones de nuestro Código Civil.[46] Sin embargo, al aplicarlas debemos considerar que nuestra función al resolver controversias no es generar áreas grises, problemáticas o que puedan confundir a la ciudadanía y a los funcionarios encargados de aplicar las normas que dictamos.

Ciertamente, el efecto práctico de distribuir una herencia o una porción de ella "por mitad" o "por partes iguales" o en dos partes de "cincuenta porciento" **sería el mismo si ninguna de las personas llamadas a suceder premuere al testador, repudia o resulta incapaz de heredar.** No obstante, lo que el artículo citado hace es, entre otras cosas, aclarar que **la situación es distinta si alguno de esos eventos ocurre.** Ahí gran parte de la importancia de la regla que preceptúa el Art. 938 del Código Civil, *supra*.

Nótese que el Art. 938, *supra*, establece la forma en que debe interpretarse un testamento para encontrar la voluntad del testador en lo que respecta al derecho de acrecer. Conforme se infiere manifiestamente de su texto, el efecto jurídico **dependerá del uso de las palabras y la forma** en que se hizo la distribución del caudal hereditario al redactar el testamento. Este es el **símbolo exterior y objetivo** más relevante que la ley tiene en cuenta para que

---

[46] Véase *Serrano v. Roca*, 43 DPR 670 (1932); *Calimano Díaz v. Calimano,* 103 DPR 123 (1974); *Fernández Marrero v. Fernández González*, supra. Ningún caso en nuestra jurisprudencia ha definido lo que constituye una designación especial de parte.

se produzca o no el acrecimiento, y así satisfacer la voluntad del causante.[47]

El propio estatuto excluye el derecho de acrecer **cuando la distribución se hace <u>numéricamente</u>**, o cuando hay alguna indicación o señal por parte del testador que separe lo dejado a los sucesores, ya sean herederos o legatarios.[48] Dicho de otro modo, incluso ante una distribución "por mitad" o "por partes iguales" de la herencia o una porción de esta, el Código Civil **<u>condiciona</u>** el que exista el derecho de acrecer a que la distribución **no se haga numéricamente** o como dueños de un cuerpo separado de bienes. Esto es, cuando se asigna expresamente una cuota determinada a cada heredero por separado. Ello no es otra cosa que una manera de reconocer que si el testador separa su herencia en **<u>porciones concretas o fijas</u>**, asignándolas cada una a una persona distinta o grupo de personas distintas, el derecho a **cada porción es independiente del de los llamados a las demás partes**.[49] Entonces, si falta alguien o desaparece todo el grupo de alguna de las partes determinadas, la porción queda de lleno vacante para los herederos abintestato, salvo se haya designado sustituto.[50]

Sin embargo, para evitar que el derecho de acrecer se entienda excluido, la propia disposición del Código Civil

---

[47] Beltrán de Heredia, *op. cit.*, pág. 100.

[48] Véase Manresa y Navarro, *op. cit.*, pág. 384. Véase, además, M. Diez Fulladosa, *La herencia: Su régimen jurídico en Puerto Rico,* InterJuris, 2015, pág. 324.

[49] Beltrán de Heredia, *op. cit.,* pág. 100; Manresa y Navarro, *op. cit.,* pág. 368.

[50] Art. 941 del Código Civil, 31 LPRA sec. 2756.

establece **tres instancias** en que puede redactarse el testamento, a saber: (1) distribuyendo la herencia o una porción de esta con la frase "**por mitad**", **sin hacer una distribución numérica o con señales que separen la vocación**; o (2) distribuyendo la herencia o una parte de esta con la frase "**por partes iguales**", **sin hacer una distribución numérica o con señales que separen la vocación**; o (3) distribuyendo la herencia o una porción de esta de cualquier **forma alícuota**, **pero sin hacer una distribución numérica o con señales que separen la vocación**.

Cónsono con lo anterior, Beltrán de Heredia señala que el principio general para que la vocación colectiva a una misma herencia pueda germinar y tener el efecto de acrecer cuando se produzca una vacante, es indispensable que el llamamiento se haya realizado sin especial designación de partes, es decir, que el testador *no haya asignado a cada heredero una parte concreta, separada y determinada*, o que no haya realizado una división o distribución de toda la herencia o parte de ella en partes asignadas cada una de ellas a cada uno de los herederos.[51] Conforme con este, el derecho de acrecer depende de la forma específica —la ausencia de especial designación de parte— en que se llama a heredar en el patrimonio, "**según la terminología** del

---

[51] Beltrán de Heredia, *op. cit.*, pág. 101.

código, o más técnicamente en la **vocación solidaria**". (Énfasis y subrayado suplido).[52]

Una designación especial de partes significa que los herederos no son llamados al mismo "objeto", lo cual, como hemos visto, es un presupuesto esencial del acrecimiento. Beltrán de Heredia señala que es requisito que sea un mismo objeto, y que este sea "asignado a varios *in totum*, ya que el hecho de que […] [se] haya[n] determinado las partes de los institu[i]dos excluye que se pueda presumir que […] lo hayan sido en un mismo y único objeto, o sea en toda la herencia o en una misma porción de ella". (Comillas omitidas).[53] Afirma que si las partes se fijaron, "con la consiguiente distribución entre todos los herederos, y la asignación de cada una de aquellas a cada uno de [e]stos, estaríamos ante una vocación plural, […] pero fraccionaria y no solidaria". Además, sostiene correctamente, siguiendo el texto de la ley, que si a cada heredero **se le asignó una cuota**, estos no son "llamados a una misma herencia ni a una misma porción de ella[;] […] en realidad **no son llamados a un *mismo objeto*, sino cada uno a un objeto**, a aquel que integra la *parte* de una misma herencia, o a *una parte* de una misma porción de ella". (Énfasis suplido).[54] Es que, como bien señala este tratadista, "la designación, distribución, determinación y división de partes, aparte de suponer falta de un requisito legal, **manifestaría**

---

[52] Íd., pág. 59.

[53] Íd., págs. 102.

[54] Íd., págs. 100-101.

**expresamente una voluntad del testador contraria al**
**acrecimiento, ya que** […] <u>**revela su intención de que cada**</u>
<u>**heredero suceda en la parte *a él asignada*, pero no en la de**</u>
<u>**los demás**</u>". (Énfasis y subrayado suplido).[55] A fin de
ilustrar qué constituye una especial designación de parte,
entiendo relevante esbozar un ejemplo elaborado por este
autor:

> [P]ara llegar a conclusiones prácticas, es lo
> mismo decir por aplicación del artículo 982
> [(Art. 937 nuestro)]: instituyo herederos a Pedro
> y Manuel, que decir, por aplicación del 983
> [(Art. 938 nuestro)]: instituyo herederos a Pedro
> y Manuel en partes iguales, o decir: instituyo
> herederos a Pedro y Manuel por mitad.
>
> Pero, y dentro ya exclusivamente del
> artículo 983, no es lo mismo decir: instituyo
> herederos a Pedro y Manuel **por mitad**, que decir,
> instituyo herederos a Pedro en la mitad de mi
> herencia e instituyo a Manuel **en la <u>otra</u> mitad** de
> mi herencia. En el primer caso habría lugar al
> acrecimiento entre Pedro y Manuel porque el
> testador, al llamarlos conjuntamente por mitad,
> **ha hecho una unidad de toda la herencia**; mientras
> que en el segundo caso no habría lugar a tal
> efecto **porque el testador ha hecho de cada mitad**
> **un cuerpo separado de bienes**, y a cada uno de
> ellos, cada una de las dos mitades, las ha
> asignado a cada uno de los dos herederos.
>
> Asimismo, puede el testador dividir su
> herencia en tres partes, lo que no excluye el
> acrecimiento, por ser partes alícuotas. Así, por
> ejemplo, cuando dice: instituyo herederos a
> Pedro, Manuel y Juan por terceras partes. Pero sí
> puede excluir el acrecimiento la distribución que
> de las partes haga. Pongamos un ejemplo complejo
> en el que se den diversas hipótesis. Por ejemplo,
> puede decir el testador: **<u>divido</u> mi <u>herencia</u>** en
> tres partes; en un tercio instituyo heredero a
> Pedro; en **<u>otro tercio</u>**, a los cuatro hijos de mi
> hermano Manuel, y en el **<u>otro</u>**, a Juan, Luis y

---

[55] Íd., pág. 102. Según explica Beltrán de Heredia, tomando el propio texto de la ley, "lo auténticamente revelador de la voluntad del testador favorable al acrecimiento es que [e]ste no asigne una parte a cada heredero, no distribuya separadamente las cosas y los derechos de la herencia y los asigne a cada heredero, no haga unidades ("cuerpo separado de bienes") con las partes de su herencia y las asigne a cada heredero ("haga a cada uno dueño")". Íd., pág. 104.

Antonio. Pues bien, el testador ha hecho de toda su herencia tres unidades, **tres cuerpos de bienes separados**, y los ha asignado: uno para Pedro, otro para los cuatro hijos de su hermano Manuel y otro para Juan, Luis y Antonio. Por ello, por vacante Pedro no puede acrecer ni los cuatro hijos de Manuel, ni Luis, Juan y Antonio. Si la vacante la produce uno de los hijos de Manuel, tendrá lugar el acrecimiento entre los tres restantes, pero no participarán ni Pedro, ni Juan, Luis y Antonio. Si es uno de estos últimos quien origina la vacante, pongamos Luis, acrecerán Juan y Antonio, no Pedro ni los cuatro hijos de Manuel. (Énfasis y subrayado suplido).[56]

Evidentemente, la norma que instituye el Art. 938 del Código Civil está fundamentada en principios de lógica en la distribución de una herencia. Si un testador decide repartir su herencia o una porción de esta "por partes iguales", en el caso de que alguno de los llamados sobre esa porción no pueda recibirla, los demás acrecerían y recibirían una cantidad mayor, pero continuaría siendo por partes iguales entre los herederos. En ese supuesto la distribución sería acorde con lo que se instituyó de forma expresa en el testamento: que se divida la herencia o alguna porción de esta por partes iguales. Sin embargo, si la herencia o una porción de esta se divide, e.g., **porcentualmente**, dadas las limitaciones que conlleva la interpretación de un testamento, la intención evidente del testador es que la distribución se haga conforme al porcentaje concreto señalado en el testamento. Así, lo trascendental es "que no se designe especialmente una parte

---

[56] Íd., págs. 104-105

para cada heredero, que no se asigne expresamente una parte separada, independiente, para cada heredero".[57]

Asimismo, para entender la razón de la salvedad que establece el Art. 938, *supra*, es necesario revisitar su origen. En sus inicios el uso de la frase "por mitad" o "por partes iguales" excluía el derecho de acrecer. Esta era la noción generalizada, pues, como la Ley de Partidas no establecía o daba ejemplos de lo que aquí ocurría, se consideraba que el acrecimiento debía negarse ante el hecho de que, de cierta manera, se había asignado al sucesor su parte.[58] Ahora bien, para dejar en el pasado esta percepción, el Código estableció una aclaración particular que se activa si se siguen las instrucciones allí expresadas. Con esta, como excepción, el testador tiene una forma de hacer constar una voluntad distinta a la noción en aquel momento prevaleciente. Por eso la explicación de la frase "por mitad" o "por partes iguales", para que no se entienda que estas, por sí solas, excluyen el derecho de acrecer. En ese sentido, para propósitos del Art. 937 y 938, *supra*, se aclara que la frase "por mitad" o "por partes iguales", por su naturaleza, y como principio legal de interpretación testamentaria, llevan consigo la vocación conjunta o solidaria a que se refiere el Código Civil vigente. Sin embargo, también se esclarece que la vocación con una designación específica, determinada y separada, es

---

[57] Íd., pág. 104.

[58] Manresa y Navarro, *op. cit.,* págs. 371-372.

decir, una designación **numérica** particular, excluye el acrecimiento a los llamados sobre otras partes. De haber esa designación numérica (específica, determinada y separada), aunque se haya utilizado también la expresión "por mitad" o "por partes iguales", para que los llamados sobre alguna de las otras partes puedan adquirir lo que correspondía al potencial sucesor-inhábil, es indispensable que el testador los instituya sus sustitutos.[59]

Ahora bien, alejados y de forma contraria al texto claro del Código, algunos autores arguyen que el derecho de acrecer se excluye solo cuando la distribución se hace, no sobre una porción alícuota determinada numéricamente, sino sobre bienes particulares de la herencia (e.g. cierta cantidad de dinero).[60] Otros argumentan que la norma que debe imperar es que el derecho de acrecer se excluye cuando la institución, aunque sobre una porción alícuota de la herencia, se haga en partes desiguales entre los llamados a heredar.[61] No obstante, como pudimos ver, el texto de la ley destruye cualquier base para llegar a estas teorías.

En primer lugar, la ley habla de que se haya "determinado expresamente **una cuota**". Esto no se limita solamente a legados o cosas particulares, como parece

---

[59] Claro está, en ese supuesto no lo adquirirían por el acrecimiento, sino como sustitutos el potencial sucesor-inhábil.

[60] Puig Brutau, *op. cit.*, pág. 382, haciendo referencia a Ossorio Morales, *op. cit.*

[61] Íd., haciendo referencia a Mucius, Scaevola y Castán ("Según este criterio, no sólo se da el derecho de acrecer cuando los herederos están instituidos sin especial designación de partes, sino también cuando están designados en partes numéricas iguales, excluyéndose cuando están en partes desiguales").

indicar la opinión de conformidad de la Jueza Presidenta Oronoz Rodríguez y algunos autores.[62] Asumir y respaldar la posición allí suscrita conlleva que frente a cualquier vocación como heredero siempre habrá acrecimiento, aun cuando la distribución se haga en incumplimiento con los requisitos establecidos en el Código. En efecto, **es una enmienda a la ley que tiene el efecto de eliminar parte de lo que dispone; es hacer invisible e inaplicable la norma de hermenéutica que este establece el segundo párrafo del Art. 938**, *supra*.

Segundo, contrario a lo que establece el Código, estas teorías parten de la premisa de que la partición numérica que excluye el derecho de acrecer, está condicionada a que no sea una distribución por partes iguales. En otras palabras, estas posturas de la doctrina conllevarían que cualquier distribución, aunque sea numérica o en las que el testador separó en cuotas determinadas expresamente, se activaría el acrecimiento. Empero, **la discusión sobre designaciones numéricas desiguales no tiene cabida en el texto del estatuto**. El Código no condiciona el resultado a ello, sino a que no se haga numéricamente o como un cuerpo separado, o, lo que sería igual, que no esté presente la vocación solidaria.

Lo que determina el llamamiento sin especial designación de partes es que se trata de un **llamamiento**

---

[62] Op. de conformidad, pág. 18 ("entiendo que es más razonable la postura mayoritaria, la cual razona que la palabra 'numéricamente' se refiere a una **cantidad determinada y concreta** y no a una porción alícuota de la herencia").

**eminentemente variable y de vocación solidaria.**[63] De ahí que, además de lo mencionado, las frases "por mitad" o "por partes iguales" no excluyan el derecho de acrecer, pero que la designación expresamente numérica sí lo haga. En este último supuesto, **no podría haber variación a lo dispuesto en el testamento** que no sea la que pueda haber establecido el propio testador.

Como consecuencia, no es correcto decir ──como hace la opinión de conformidad── que si la designación numérica es equivalente a una distribución por partes iguales, el efecto que debe dársele es el mismo. Esto es, que debemos ignorar la **distribución numérica, que inevitablemente resulta no variable.** Ello, máxime cuando el texto del Art. 938 aclara precisamente esta norma y su teoría conlleva que se aplique una regla totalmente contraria a lo allí pautado.

III

En la cláusula testamentaria en controversia, la testadora dispuso lo siguiente:

> **TERCERO:** Instituye por sus únicos y universales herederos, en la totalidad de sus bienes, en un **cincuenta por ciento (50%)** de su caudal relicto, a su antes mencionado hermano legítimo de doble vínculo, don Francisco Carrillo Norat quien es mayor de edad, viudo, propietario y vecino de Ponce, Puerto Rico y **en cuanto al otro cincuenta porciento de su caudal relicto** y por partes iguales a los hijos de su otro hermano ya difunto, quienes son; don Carlos Roberto Carrillo Vázquez, mayor de edad, casado, propietario y vecino de Orlando Florida, Estados Unidos de

---

[63] Lacruz Berdejo & Sancho Rebullida, *op. cit.*, pág. 68.

Norteamérica; don Francisco José Carrillo Vázquez, mayor de edad, soltero, propietario y vecino de Ponce, Puerto Rico y doña María de los Ángeles Carrillo Vázquez, mayor de edad, casada, abogada y vecina de Ponce, Puerto Rico; disponiendo la testadora compareciente que esta institución voluntaria de herederos queda gravada y sujeta al reconocimiento y pago por los antedichos herederos de los legados voluntarios que ella constituye y ordena más adelante. (Énfasis suplido).

Del citado testamento surge la existencia de dos elementos que, conforme a la ley que aplica y las reglas de interpretación prevalecientes, hacen forzoso concluir que el derecho de acrecer fue excluido por la testadora. En primer lugar, la distribución no se hizo "por mitad" o "por partes iguales", sino que **se fijó numéricamente**; **distribuyéndola por porcentajes determinados, separados y concretos mediante los cuales dividió toda la herencia en partes asignadas cada una de ellas a distintos herederos.** Asimismo, nótese que el testamento expresa "en cuanto al otro cincuenta porciento". Estas son señales adicionales que separan las referidas partes del caudal y las hacen independientes.

Consiguientemente, en cuanto al llamamiento del Sr. Francisco Carrillo Norat y los cuatro sobrinos, me veo precisado a concluir que **el testamento distribuyó la totalidad de la herencia en dos porciones separadas y específicas**. La disposición testamentaria no incluyó un llamamiento conjunto sobre la porción vacante de la herencia tras el fallecimiento del hermano de la testadora. En ese sentido, el llamamiento entre don Francisco Carrillo

Norat ——hermano de la testadora—— y los sobrinos de la testadora ——hijos del otro hermano de la testadora—— no es un llamamiento conjunto como se exige para que proceda el derecho de acrecer entre ellos. Es que, entre ellos, no hay un llamamiento solidario sobre una misma cosa o porción de la herencia, sino todo lo contario. Como mencionamos, para que correspondiera esta parte a otra persona o grupo de persona mediante testamento, era indispensable que el causante los nombrara sustitutos.

El único llamamiento conjunto en la cláusula testamentaria es el de los sobrinos, pero **únicamente sobre su cincuenta porciento de la herencia.** Solo sobre esa otra parte del caudal hereditario, separada del primer cincuenta porciento, se cumplen las normas de acrecimiento del Código Civil, pues instituyó herederos a los sobrinos mencionados "por parte iguales" de esa porción determinada, y sin hacer una designación numérica entre ellos.

Así pues, al no estar presentes los requisitos establecidos en la ley para que proceda el acrecimiento sobre la porción vacante, el efecto práctico de la sentencia que emite este Tribunal es **incorporar por *fiat* judicial un grupo de <u>sustitutos</u> en una disposición testamentaria en la cual esta figura no aparece.** Es decir, el efecto de la decisión es designar como sustitutos a varias personas no instituidas de esa forma en el testamento.

Resolver que procede el derecho de acrecer en un testamento que distribuye el patrimonio en **dos partes separadas y fijas de cincuenta porciento**, en el cual una persona heredaría una de esas porciones y cuatro personas se dividirían el otro cincuenta porciento, no es la forma correcta de aclarar y de aplicar la ley. Por el contrario, su efecto es que una disposición de nuestro Código Civil que resultaba clara, ya no lo es.

De hecho, nuestra función no puede conllevar que enmendemos las leyes, con el fin de que expresen lo que nos parezca mejor. Las demás Ramas Constitucionales merecen que la norma establecida en las leyes se respete y, en el caso de que estas encuentren que el texto de la ley debe variarse, entonces ellas así lo hagan a través de los mecanismos correspondientes. Repito, esto no nos atañe a nosotros.

Las repercusiones de la decisión que secunda la mayoría de los miembros de este Tribunal son nefastas. La notaría requiere que los profesionales que la ejercen hagan una evaluación en cuanto a la forma adecuada de redactar un testamento para hacer constar la voluntad de la persona otorgante; máxime cuando en el momento en que los tribunales tienen que interpretar su contenido el testador no está disponible para aclarar cuál fue su intención. Esta decisión generará confusiones enormes en cuanto a la forma en que los abogados-notarios deben hacer constar la voluntad del testador al momento de excluir el derecho de

acrecer de otros sucesores. Es que la intervención de un notario ─profesional del Derecho en Puerto Rico─ en la redacción de un testamento impedía que nos alejáramos del texto de la ley en cuanto a la redacción de los testamentos para excluir o permitir el derecho de acrecer en una porción de la herencia. **Ahora nuestros notarios no podrán tomar en cuenta ni descansar en la doctrina establecida en la ley al momento de redactar un testamento.** De igual manera, la decisión creará confusión a los jueces que tienen que interpretar la norma estatuida e, incluso, conllevará que de ahora en adelante tengamos que ignorar lo establecido en el Art. 938, *supra*. Ello, a pesar de que lo preceptuado en el Código Civil suponía una regla sumamente útil en la redacción e interpretación de estos instrumentos públicos. Es que, aunque se estatuye que no hay derecho de acrecer cuando el testador ha fijado expresamente una cuota para cada heredero, numéricamente o con señales que hagan a cada uno dueño de un cuerpo de bienes separado, este Tribunal resuelve lo contrario. Esta determinación, en efecto, y como adelantamos, es una enmienda sustancial al Art. 938 del Código Civil que se consuma en un ejercicio que ignora las normas de hermenéutica establecidas por nuestra jurisprudencia y el propio estatuto, especialmente al no tomar en consideración las disposiciones expresas sobre interpretación testamentaria.[64]

---

[64] Véase, e.g., Art. 624 del Código Civil, *supra*.

A modo ilustrativo, cabe notar que en la sentencia del 6 de noviembre de 1962, STS 6 noviembre de 1962 (RJ 1962, 4192) a la que hace referencia la opinión de conformidad el Tribunal Supremo de España tuvo que interpretar una cláusula que sí estaba redactada según las normas instituidas en el Art. 938 del Código Civil para permitir el acrecimiento. Es decir, una cláusula que cumplía cabalmente con la norma de hermenéutica contenida en el estatuto. Allí el testamento tenía un llamamiento conjunto, sin especial designación de partes. Esta no hacía la distribución numéricamente o con señales que separaran cuerpos o mostraran la intención de excluir el derecho de acrecer, sino que se limitaba a distribuirla "por partes iguales". El testamento, en lo pertinente, disponía así:

> [E]n el remanente de sus bienes instituye herederos **por partes iguales** a sus hermanos don Antonio y doña Elidad y a sus sobrinos Ofelia, Jesús y Enrique C. R., formándose con la herencia tres **partes iguales** y adjudicándose una a su hermano don Antonio, otra a su hermana doña Elidad y la parte restante, en **porciones iguales**, a sus sobrinos antes mencionados. (Énfasis suplido).[65]

Evidentemente esta es una disposición testamentaria redactada de forma sustancialmente **distinta** a la del caso de autos. No obstante, la controversia era muy parecida a la que tenemos ante nuestra consideración. La Corte Suprema española tuvo que resolver si, premuerto uno de los hermanos del testador, la porción que a este le correspondía acrecía a los demás herederos o, por el

---

[65] STS 6 noviembre de 1962 (RJ 1962, 4192). Véase, además, Puig Brutau, *op. cit.*, págs. 383-384.

contrario, debía pasar a los herederos abintestato. Resolvió que había acrecimiento.

Más allá del análisis del Tribunal Supremo de España para resolver como lo hizo, ──ello, pues, lo cierto es que las decisiones del Tribunal Supremo de España fueron criticadas por considerarse aventuradas e interpretar en forma muy amplia el texto del Código Civil──[66] nótese que esta es una cláusula testamentaria que se redactó conforme los parámetros establecidos en el Código Civil para que no se excluyera el derecho de acrecer. La voluntad del causante, según consta en el testamento, es repartir la herencia dentro de la excepción del segundo párrafo del Art. 938, *supra*. Aunque se divide la herencia en tres partes, la distribución no se hace numéricamente. Además, el lenguaje estaba dirigido claramente a que se entendiera inmerso en la frase "por partes iguales".[67]

---

[66] Véase Ossorio Morales, *op. cit.*, págs. 328-329, haciendo referencia a Valverd. Véase, además, Beltrán de Heredia, *op. cit.*, pág. 81 n. 2 ("nuestra jurisprudencia sigue afectada a la doctrina romanista de la 'coniunctio', intentando ver cada caso concreto si hubo o no conjunción en la forma tripartita, en vez de buscar un concepto del fenómeno y ver en cada caso si se han dado o no los requisitos del art. 982 [(Art. 937 nuestro)]"). De hecho, la opinión de conformidad, al exponer la doctrina elaborada en España, reconoce que aquella jurisprudencia "[a]dvirtió que la designación de parte alícuota, **aunque sea numérica**, no excluye el derecho de acrecer". (Énfasis y subrayado suplido). Op. de Conformidad, pág. 12. **Ello es totalmente contrario a lo que dispone el Art. 928**, *supra*: "[l]a frase 'por mitad o por partes iguales' u otras que aunque designen parte alícuota, no fijen ésta numéricamente o por señales que hagan a cada uno dueño de un cuerpo de bienes separado, no excluyen el derecho de acrecer".

[67] Sin embargo, una lectura del testamento en controversia en el caso de autos solo permite concluir que aplica el ejemplo siguiente, elaborado por el profesor Vélez Torres: "*A instituye herederos de un tercio de la herencia a B, C, y D; en otro tercio instituye a E, F, y G, y en el resultante tercio a H y J.* En este caso el testador estaría creando tres unidades diferentes. Por lo tanto, al ocurrir vacantes, **se produce el acrecimiento solamente en la unidad en que dicha vacante ocurre**". (Énfasis y subrayado suplido). Vélez Torres, *op. cit.*, pág. 437.

Si algo queda claro en el caso de autos es que la voluntad de la testadora no se puede cumplir. Conforme instituida en el testamento, al premorirle el Sr. Francisco Carrillo Norat, quien recibiría específicamente el primer cincuenta porciento de la herencia, ya no es posible completar su voluntad cristalizada. Ante este hecho, nuestro trabajo no es suplir o especular en cuanto a lo que hubiera querido la testadora. No estamos en posición para ello.

Nuestra función es interpretar la ley y el contenido del testamento, y aplicar la norma que proceda. Así, en este caso correspondía seguir lo dispuesto en el Art. 941 del Código Civil de Puerto Rico, 31 LPRA sec. 2756, el cual dispone que "[e]n la sucesión testamentaria, cuando no tenga lugar el derecho de acrecer, la porción vacante del instituido, a quien no se hubiese designado substituto, pasará a los herederos legítimos del testador, los cuales la recibirán con las mismas cargas y obligaciones". Es decir, en vista de que el Sr. Francisco Carrillo Norat también premurió a la testadora, el primer cincuenta porciento de la herencia se debió distribuir conforme las normas de la sucesión intestada.[68] Esta es la forma de repartir el caudal hereditario en aquellos casos en los cuales el causante no ha dispuesto en el testamento qué debe suceder con su patrimonio o parte de este por un

---

[68] Art. 941 del Código Civil, *supra*; Vélez Torres, *op. cit.*, pág. 433.

evento que pueda acaecer previo al momento de su muerte y cambiar las circunstancias de la partición, como sucedió en el caso ante nuestra consideración.

Como vimos, y me parece importante reiterar, la norma establecida en el segundo párrafo del Art. 938 del Código Civil impone dos causas de exclusión del derecho de acrecer: (1) fijar la cuota numéricamente, aunque se haga por mitad o por partes iguales, y (2) fijar la cuota, aunque sea por mitad o por partes iguales, por señales que hagan en cada uno de los herederos dueño de un cuerpo de bienes separado.

En vista de ello, entiendo que no erró la registradora en su calificación, ya que no había derecho de acrecer para los sobrinos de la testadora sobre la primera parte. El primer cincuenta porciento se fijó para el hermano de la causante y no para sus sobrinos, **a quienes se les designó <u>separadamente</u> el otro cincuenta por ciento de la herencia**. Esta es la interpretación y aplicación más clara que surge del estatuto y de los términos utilizados en el testamento. Por lo tanto, disiento de la parte de la sentencia que resuelve lo contrario.

¿Cómo la designación que separa en dos partes expresamente de 50% y otro 50% permite el derecho de acrecer y la designación que separa en dos partes expresamente de 75% y otro 25% lo excluye? ¿No son ambas designaciones numéricas, determinadas y separadas conforme dispone el Código Civil? ¿No se traduce lo que dice la ley a que las designaciones numéricas son condiciones que excluyen el derecho de acrecer cualesquiera que sea la distribución? ¿No dice el Código que se entenderá hecha la designación por partes cuando el testador haya determinado

expresamente **una cuota** para cada heredero, salvo se utilicen las frases que específicamente se señalan, y sin que se fijen a su vez numéricamente? Sí, esto es lo que literalmente expresa la ley. Como esto es lo que dispone, nuestro deber es seguir el estado de derecho allí instituido, a menos que sea otra la intención evidente del testador.[69]

**La única manera de llegar a la conclusión** que se alcanza en la sentencia y en la opinión de conformidad es si el Art. 938, *supra*, dispusiera lo siguiente:

> *Se entenderá hecha la designación por partes solo en el caso de que el testador haya determinado expresamente una* ~~cuota~~ *COSA DETERMINADA Y CONCRETA O*

---

[69] No se trata de una norma absoluta que excluya el acrecimiento en todo caso que la cuota se determine numéricamente, ya que, como dijimos, este derecho se sustenta en la voluntad del testador. Ahora bien, lo cierto es que estamos obligados a seguir la regla expresa de interpretación testamentaria que dispone el Art. 938 del Código Civil, salvo surja claramente que fue otra la intención de la persona testadora. De no estar presente esta circunstancia, no podemos alejarnos de la norma que **todos** los autores reconocen surge del texto literal del Art. 938. Es que la testadora, incluso si entendiéramos que la cláusula testamentaria no es clara y llegáramos a la alternativa de evaluar elementos intrínsecos del testamento, reconoce que la porción designada no es variable, sino determinada, fija y concreta. En el testamento esta expresa lo siguiente:

> **NOVENO:** Lo antes expresado por la testadora constituye su última y definitiva voluntad en cuanto a la disposición de su caudal hereditario y las decisiones tomadas en cuanto a la repartición del mismo, las ha hecho en forma ponderada, basadas en su enorme cariño y amor por todos los seres queridos a los cuales les deja parte de su caudal, partiendo de lo que la testadora de buena fe pudiera en alguna forma, aunque sea modesta ayudar y/o compensar en alguna medida las necesidades de sus herederos y legatarios, así como el esfuerzo y dedicación de otros y les pido de todo corazón **que acepten la distribución por mi realizada y que no piensen jamás que he querido favorecer a unos sobre otros por consideraciones que no sean lo que creí mejor en el momento para todos**, pues a todos les quiero y respeto y así de igual forma les ruego respeten mi última voluntad y si me equivoqué en alguna medida, que me perdonen, pero lo hice todo de la mejor buena fe y con todo mi corazón para todos ustedes, no permitiendo que mis decisiones traigan discordia o resentimiento alguno entre ustedes, sino que por el contrario, lo que les lego, constituya a vuestra armonía y cariño mutuo. (Énfasis y subrayado suplido).

> *CANTIDAD DE COSAS DETERMINADAS Y CONCRETAS* para cada heredero.
>
> La *DISTRIBUCIÓN* ~~frase~~ "por mitad o por partes iguales" u otras que aunque designen parte alícuota, ~~no~~ *AUN CUANDO* fijen esta numéricamente ~~o por señales que hagan a cada uno dueño de un cuerpo de bienes separado~~, no excluyen el derecho de acrecer.

Sin duda, ello requirió una modificación sustancial al texto del Código. Así pues, **la realidad es que las presuntas interpretaciones que han surgido, y sobre las cuales se ha debatido por varios autores, no son otra cosa que la inconformidad con el texto de la ley, mas no la doctrina establecida en sus propias palabras.**[70]

## IV

Finalmente, debo resaltar que bajo la interpretación ambigua que se realiza del Art. 938 del Código Civil en la opinión de conformidad los Registradores estarían impedidos de calificar estos asuntos, que pueden incidir sobre la

---

[70] Véanse: Lacruz Berdejo & Sancho Rebullida, *op. cit.*, pág. 71. Véanse, además: González Tejera, *op. cit.*, pág. 356 ("Así, cuando el testador dispuso que una cuarta parte de su herencia fuera para Juan, otra cuarta parte para José, otra para María y la última para Hortensia, hay *especial designación de partes*, según el tenor literal del artículo 937 […]"); Manresa y Navarro, *op. cit.*, pág. 383 ("Parece deducirse del primer párrafo [(refiriéndose el primer párrafo del Art. 938 del Código Civil nuestro)], que señala expresamente *una cuota* determinada a cada heredero, no procede el derecho de acrecer, y como al decir testamento: dejo la mitad de mis bienes a *B.* y la otra mitad a *C. se determina expresamente una cuota,* se deduce que entre *B.* y *C.* no se da ese derecho. Pero en el párrafo segundo del artículo, se dice que las frases *por mitad, por partes iguales*, no excluyen tal derecho la determinación de la cosa de un modo separado, especial e independiente, de tal modo que no pueda decirse que a cada cosa haya sido llamada más que una persona; en suma, la cosa indivisa, sino dividida, separada, determinada"); Ossorio Morales, *op. cit.*, págs. 322-327 ("debe entenderse atribu[i]da a cada heredero *una cuota* –y exclu[i]do, por consiguiente, el derecho de acrecer—cuando se señale a cada heredero *una parte alícuota* **fijada numéricamente** o por *señales que hagan a cada uno dueño de un cuerpo de bienes separado*") (Énfasis suplido). Ossorio Morales admite que la tesis de De Buen, similar a la que exponemos en esta opinión disidente, "ciñéndose al tenor literal del Código, estima que siempre que se asigna a cada heredero una *parte alícuota numérica*, queda excluido el derecho de acrecer, que es, además, la interpretación más conforme con los precedentes históricos". Íd., págs. 322-328.

validez de una distribución del caudal como sucede en este caso. Así, ante la interpretación que hacen varios compañeros de este Tribunal en la opinión de conformidad, la cual a través de estas palabras he expuesto que no comparto, en todo caso lo que correspondía era resolver que la Registradora no podía notificar esta falta porque la misma está fuera de su facultad calificadora. Por ello, decir que la Registradora falló en su calificación porque hubo acrecimiento, como señala la sentencia, no es correcto.

Como es sabido, la calificación de documentos notariales ——como es un testamento—— se circunscribe a examinar si estos cumplen con las formas extrínsecas que la ley requiere, la capacidad de los otorgantes y si el negocio jurídico contenido es válido.[71] Esta función verificadora se limita a determinar si un documento es o no inscribible, mas **no comprende el declarar la existencia o inexistencia de un derecho dudoso** o contendido entre partes.[72] Su conclusión en cuanto al alcance de distribuir una herencia como se hizo en este caso, respecto a que permite el derecho de acrecer, como se interpretó el Art. 938, *supra*, e instituyó **una norma difícil de definir**, **es una calificación que ningún registrador podría realizar**. Ello, puesto que se trata, de ahora en adelante, de declarar la **existencia o inexistencia de un derecho dudoso**

---

[71] *USI Properties v. Registrador,* 124 DPR 448, 461-462 (1989).

[72] *Gasolinas PR v. Registrador*, 155 DPR 652, 663 (2001).

que para establecerse depende de la determinación de un tribunal. Así, ni en el caso de que compartiera la interpretación que realizó este Tribunal, hubiera resuelto como se hizo.

El tiempo dirá.


                                        Edgardo Rivera García
                                            Juez Asociado